UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Nos. 3:11-CR-76; |
| ) | 3:12-CR-145 |
| BOBBY YORK, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION

This matter is before the Court on Defendant's motion to reduce sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), for immediate compassionate release [case no. 3:11-cr-76, doc. 101; case no. 3:12-cr-145, doc. 12]. The government has responded in opposition [case no. 3:11-cr-76, doc. 103; case no. 3:12-cr-145, doc. 15], and filed a supplemental response in opposition [case no. 3:11-cr-76, doc. 106; case no. 3:12-cr-145, doc. 20]. Defendant has not replied, and the time for doing so has expired. *See* E.D. Tenn. L.R. 7.1(a). This matter is now ripe for the Court's review. For the reasons stated below, Defendant's motion for immediate compassionate release [case no. 3:11-cr-76, doc. 101; case no. 3:12-cr-145, doc. 12] will be **GRANTED**.

### I.    BACKGROUND

In 2011, Defendant was indicted on one count of conspiracy to distribute and possess with intent to distribute a mixture containing oxycodone (Count 1), four counts of

distribution or, or possession with intent to distribute, a mixture containing oxycodone (Counts 2-5), and one count of possession of a firearm in furtherance of a drug trafficking crime (Count 6). [Case No. 3:11-cr-76, doc. 3]. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), Defendant pleaded guilty to Counts 1-6 of the indictment, and the parties agreed that: (1) a sentence of 46 months, at the bottom of the Guideline range, was appropriate as to Counts 1-5; (2) a sentence of 60 months was appropriate as to Count 6, to run consecutive to the sentences imposed on the other counts; and (3) a term of supervised release of five years was appropriate. [*Id*., doc. 33 at 1-2, 6]. As a basis for the plea, the plea agreement stated that a confidential informant had purchased oxycotin, roxycodone, and xanax pills from Defendant and his wife on multiple occasions, and, after a search warrant was executed on the home, law enforcement discovered 131 oxycotin tablets, 277 oxycodone tablets, approximately $52,046 in U.S. currency, a camera surveillance system, numerous firearms, and a drug ledger. [*Id*. at 2-4].

After Defendant pleaded guilty, but before he was sentenced, Defendant was charged by information in a separate case of one count of social security fraud. [Case No. 3:12-cr-145, doc. 1]. Pursuant to Rule 11(c)(1)(C), Defendant pleaded guilty to this offense, and the parties agreed that a sentence imposed concurrently with the sentences for the offenses discussed above would be appropriate. [*Id*., doc. 2 at 1, 5]. As a basis for the plea, the plea agreement stated that a claims representative, in the course of conducting a redetermination of Supplemental Security Income ("SSI") for Defendant's mother, Ruby York, was informed that Ms. York was renting a house that belonged to Defendant. [*Id*. at 2]. Defendant confirmed that his mother was his tenant. [*Id*.]. Because, at the time, an

SSI disability benefits recipient could own only a single property, which must be their primary residence, the claims representative searched land records and found that Defendant owned four proprieties, and obtained his second property in 2002, meaning that he had not been eligible for SSI benefits since June of 2002. [*Id*. at 2-4]. From June 2002 to April 2012, Defendant received $73,567 in SSI benefits to which he was not entitled. [*Id*. at 4].

The Court sentenced Defendant, consistent with the plea agreements, to a total of 106 months' imprisonment, including 46 months as to Counts 1-5 in Docket Number 3:11-CR-76 and Count 1 in Docket Number 3:12-CR-145, to be served concurrently, and 60 months as to Count 6 in Docket Number 3:11-CR-76, to be served consecutively. [Case No. 3:11-cr-76, doc. 45; Case No. 3:12-cr-145, doc. 8].

Defendant has now filed a motion for immediate compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act. [Case No. 3:11-cr-76, doc. 101; Case No. 3:12-cr-145, doc. 12]. Defendant states that he is currently in palliative care at FMC Butner, is an amputee and wheelchair-bound, and has been diagnosed with acute on chronic decompensated congestive heart failure. [*Id*. at 1]. Defendant also states that he has been diagnosed with post-polio paralysis, acute kidney failure, diabetes mellitus type II, chronic airway obstruction, seizure disorder, and other medical conditions. [*Id*.]. Defendant notes that, during his time in prison, he has suffered multiple heart attacks due to his congestive heart failure and many complications from his diabetes. [*Id*. at 4]. Defendant further contends that medical recommendations by outside specialists are being ignored by the Bureau of Prisons ("BOP"), the facility is ill-equipped to handle his medical

issues, and he has tolerated an ill-fitted wheelchair because the BOP states that they are unable to provide one to fit his size. [*Id*.].

Defendant contends that his medical conditions constitute "extraordinary and compelling reasons" under the First Step Act that warrant a sentence reduction. [*Id*. at 2]. Defendant requests that his sentence be reduced to time served and his conditions of supervised release be modified to accommodate his release plan, which involves Defendant living with his stepson in Lafollette, Tennessee. [*Id*.]. Specifically, Defendant requests that his conditions of supervised release be modified to allow him to live in the Eastern District of Tennessee, to report to the probation officer by telephone, and to be excused from the employment requirement. [*Id*. at 5-6].

Along with his motion, Defendant has submitted documentation indicating that he has requested compassionate release from the BOP on two occasions, which were denied in August 2016 and June 2018 respectively. [Case No. 3:11-cr-76, doc. 101-1; Case No. 3:12-cr-145, doc. 12-1]. Additionally, Defendant submits documentation from the BOP which lists his current health problems, which include: (1) late effects of acute poliomyelitis; (2) hypothyroidism; (3) diabetes mellitus, type II (adult-onset); (4) hypercholesterolemia, pure; (5) anxiety state; (6) other chronic pain (lower back); and (7) paralysis. [Case No. 3:11-cr-76, doc. 101-2 at 5-6; Case No. 3:12-cr-145, doc. 12-2 at 5-6]. The records indicate that Defendant has been to numerous doctor visits about each of these conditions. [*Id*.].

A discharge summary from Duke Regional Hospital, on January 19, 2018, indicates that Defendant was diagnosed with "Angina pectoris, unstable (CMS-HCC), Coronary

artery disease involving native coronary artery of native heart with unstable angina pectoris (CMS-HCC), abnormal ECG, Diabetes mellitus type 2, insulin dependent (CMS-HCC), Seizure disorder (CMS-HCC), [and] Morbid obesity with BMI of 40.0-44.9 (HCC)." [*Id*. at 4]. The discharge report stated that Defendant would "need dual anti-platelet therapy for life." [*Id*.].

A clinical encounter administrative note from March 20, 2018, indicated that Defendant had "[u]nstable [a]ngina with un-intervenable LCx occlusion" and was "taken to the cath lab emergently." [*Id*. at 3]. The note diagnosed Defendant with "Acute on chronic, decompensated congestive heart failure," and stated that Defendant "[w]ill require aggressive diuresis[.]" [*Id*.]. Another administrative note from March 25, 2018, indicates that Defendant presented with breathing problems. [*Id*. at 2]. He was diagnosed with acute kidney failure, angina pectoris, cellulitis, and heart failure. [*Id*.]. A third administrative note, from March 29, 2018, indicates that, on March 19, 2018, Defendant "underwent a Ca[r]diac cath," and Defendant "had required a BIPAP due to heart failure." [*Id*. at 1]. The assessor noted that Defendant had suffered a prior heart attack in 2015. The note also stated that there were several difficulties in treating Defendant's heart failure, and recommended "a pacemaker when EF is <35%" as well as adding new medication. [*Id*.].

Defendant also submits an e-mail from March 19, 2018, which indicates that Defendant wrote to the physical therapy department at the BOP requesting a paraplegic wheelchair. [Case No. 3:11-cr-76, doc. 101-3; Case No. 3:12-cr-145, doc. 12-3]. Defendant stated that he "hurt all the time pain level is 9" because of his current wheelchair. He also stated that his back was hurting "24 hours a day." Ms. Hall from the physical

therapy department responded that Defendant was "provided with a new wheelchair ~ 1.5 years ago that is appropriate for [his] condition." Ms. Hall continued to inform Defendant that "paraplegic wheelchairs do not come in the width that you need as they are made for smaller and more active individuals." [*Id.*].

The government responds that Defendant has twice requested relief from the BOP, which was denied both times, and, to the extent Defendant believes his medical conditions have worsened, he should submit a new request to the BOP before presenting it to the Court. [Case No. 3:11-cr-76, doc. 103 at 1; Case No. 3:12-cr-145, doc. 15 at 1]. The government argues that Defendant has failed to exhaust his remedies with the BOP, and therefore, this Court lacks authority to consider his request. [*Id.* at 2]. The government states that it does not dispute that congestive heart failure can be a terminal medical condition constituting an "extraordinary and compelling" reason under U.S.S.G. § 1B1.13, but contends that immediate release would unduly minimize the severity of Defendant's offense conduct. [*Id.*]. The government emphasizes that Defendant has served only 73 months in custody, meaning that he has served only 13 months beyond the 60-month statutorily mandated minimum sentence for his firearms offense. [*Id.* at 3]. The government contends that a 13-month sentence for Defendant's drug-related offenses is inconsistent with the 18 U.S.C. § 3553(a) factors. [*Id.*].

The government later filed a supplemental response in opposition, stating that it has obtained information from the BOP that Defendant submitted an incomplete request for compassionate release to the BOP earlier this year, but when a prison official met with him to determine the nature of his request and warn him that it was incomplete, Defendant chose

6

to withdraw the request. [Case No. 3:11-cr-76, doc. 106 at 1; Case No. 3:12-cr-145, doc. 20 at 1]. The government contends that, based on this, Defendant has not satisfied the requirements of 18 U.S.C. § 3582(c)(1)(A), and the Court lacks authority to consider the motion. [*Id*.]. The government also contends that it has received some of Defendant's recent medical records, which weigh against Defendant's assertion that his medical condition constitutes an "extraordinary and compelling" reason that would justify immediate release. [*Id*. at 2].

The government attaches a copy of a request that Defendant filed with the BOP on April 2, 2019, stating that he would like to be considered for compassionate release because he was over 60 years of age, had completed over 2/3 of his sentence, and had "extraordinary medical conditions." [Case No. 3:11-cr-76, doc. 106-1; Case No. 3:12-cr-145, doc. 20-1]. An administrative note dated June 6, 2019 indicates that a BOP official met with Defendant about his request and Defendant was unsure about various criteria for his request. [Case No. 3:11-cr-76, doc. 106-2; Case No. 3:12-cr-145, doc. 20-2]. Defendant stated that he had attorneys working on his release and therefore he "would withdraw his request and let his attorneys proceed." [*Id*.].

The government also submits a consultation report from April 30, 2019, which recounts Defendant's "very complex past cardiac history." [Case No. 3:11-cr-76, doc. 106-3 at 7; Case No. 3:12-cr-145, doc. 20-3 at 7]. The doctor indicated that Defendant had several interventions and Defendant "reports that he is feeling much better. He has had no further angina and feels that his breathing is better." [*Id*.].

A clinical encounter report from May 21, 2019, indicates that Defendant was being seen in the "Pharmacy Diabetes Management Clinic," and reported that his "BG" has been higher lately, but he knew that it was due to the foods that he was eating. [*Id*. at 1]. The provider concluded that Defendant's diabetes was "moderately controlled on insulin and metformin[.]" [*Id*. at 3].

## II.   DISCUSSION

18 U.S.C. § 3582(c), as amended by the First Step Act, Pub. L. 115-391, 132 Stat. 5194, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,* may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)   extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A) (emphasis added). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not the defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release with the court, after filing a request for the BOP to file such a motion on his behalf, and being denied. *United States v. Beck*, 1:13-cr-186-6, 2019 WL 2716505, at *5 (M.D.N.C. June 28, 2019). Beyond this change,

the statute still applies the same statutory requirements to a defendant's motion for compassionate release as previously applied to motions by the BOP Director. *Id*.

The Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is contained in U.S.S.G. § 1B1.13 and the accompanying Application Notes. *United States v. McGraw*, 2:02-cr-18, 2019 WL 2059488, at *3 (S.D. Ind. May 9, 2019). While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release, courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *Id*. (citing *United States v. Casey*, No. 1:06-cr-71, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, No. CR 05-0217, 2019 WL 1472320, at *2 (D.N.M. 2019); *United States v. Overcash*, 3:15-cr-263, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019)). Moreover, the Court has no reason to believe that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider. *See id*. (concluding likewise).

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A), the compassionate release analysis requires several findings. First, the Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, the Court must determine whether Defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G.

§ 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

### A. Exhaustion

In this case, the government argues extensively that Defendant has not properly exhausted his remedy of requesting relief from the BOP, and therefore, this Court lacks authority to grant him relief under § 3582(c)(1)(A). The government asserts that Defendant previously filed requests for compassionate release with the BOP in August 2016 and June 2018, which were denied, and argues that, if Defendant believes his medical conditions have worsened since that time, he should submit a new request to the BOP. [Case No. 3:11-cr-76, doc. 103 at 1; Case No. 3:12-cr-145, doc. 15 at 1]. In its supplemental brief, the government notes that Defendant filed an incomplete request for compassionate release to the BOP earlier this year, which he withdrew after being warned that it was incomplete. [Case No. 3:11-cr-76, doc. 106 at 1; Case No. 3:12-cr-145, doc. 20 at 1]. The government again asserts that Defendant has not satisfied the requirements of § 3582(c)(1)(A), and therefore, this Court lacks authority to consider his motion. [*Id.*].

The records submitted with Defendant's motion indicate that he filed requests for compassionate release with the BOP in both 2016 and 2018, which were denied on August 30, 2016, and June 14, 2018, respectively. [Case No. 3:11-cr-76, doc. 101-1 at 1-2; Case No. 3:12-cr-145, doc. 12-1 at 1-2]. Both of these denial notices informed Defendant that he could appeal the decision, but there is no indication in the record that Defendant did so. [*Id.*]. Defendant then filed another request for compassionate release on April 2, 2019, which he withdrew in early June 2019, after a BOP official met with him about his pending

request. [Case No. 3:11-cr-76, doc. 106-2 at 1; Case No. 3:12-cr-145, doc. 20-2 at 1]. Defendant told the BOP official that he had attorneys working on his release, and therefore, he would withdraw his request and let his attorneys proceed. [*Id.*].

The Court is not persuaded that Defendant's prior requests were insufficient to grant the Court authority to address this matter. The plain language of § 3582(c)(1)(A), as amended by the First Step Act, gives the Court authority to act "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A) (emphasis added). Other district courts have recognized that the language of § 3582(c)(1)(A), as amended by the First Step Act, requires the defendant to file an administrative request with the BOP "and then either exhaust administrative appeals *or* wait thirty days after submitting his request to the BOP." *United States v. Heromin*, 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *1 (M.D. Fla. June 7, 2019) (emphasis added).

Here, Defendant filed administrative requests with the BOP in both 2016 and 2018, requesting compassionate release on the same grounds as the instant motion. Because 30 days have passed since those requests, the Court has authority to hear this matter under § 3582(c)(1)(A). Nothing in the amended language of § 3582(c)(1)(A) indicates that a defendant is required to file a new administrative request with the BOP, after the amendment of the statute, to qualify for filing a motion on his own behalf in the district

11

court. Accordingly, the Court concludes that it has authority under § 3582(c)(1)(A) to address Defendant's motion.

## B. Merits

### a. Extraordinary and Compelling Reasons

The Application Notes to section 1B1.13 provide, in part:

1. Extraordinary and Compelling Reasons.—... [E]xtraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, comment., n.1 (Nov. 1, 2018 Manual).

Defendant contends that his combination of medical conditions, but particularly, his congestive heart failure, constitute extraordinary and compelling reason justifying a reduction in sentence. Defendant specifically states that his heart condition falls within the

definition of extraordinary and compelling reasons under subsection (A)(i) of Application Note 1 to U.S.S.G. § 1B1.13, because his congestive heart failure is "a serious and advanced illness with an end of life trajectory." [Case No. 3:11-cr-76, doc. 101 at 5; Case No. 3:12-cr-145, doc. 12 at 5]. In its first response, the government agreed that congestive heart failure can be a terminal medical condition constituting an "extraordinary and compelling reason" under U.S.S.G. § 1B1.13. [Case No. 3:11-cr-76, doc. 103 at 2; Case No. 3:12-cr-145, doc. 15 at 2]. However, in its supplemental response, the government appears to contest whether Defendant's congestive heart failure is as serious as he suggests, and argues instead that, in light of recent medical records, his condition is not "extraordinary and compelling." [Case No. 3:11-cr-76, doc. 106 at 2; Case No. 3:12-cr-145, doc. 20 at 2].

The Court finds Defendant's combination of medical conditions, but particularly his heart condition, to be extraordinary or compelling reasons justifying a sentence reduction. The government acknowledged that congestive heart failure can be a terminal medical condition meriting compassionate release. The Court is not compelled by the government's argument that Defendant has not shown that his heart condition is serious enough. The medical records submitted by Defendant indicate that he has been diagnosed with chronic systolic heart failure, and he has presented on numerous occasions with chest pain and difficulty breathing. Additionally, the medical records indicate that Defendant has suffered at least one heart attack while in BOP custody, and has received numerous treatments for his heart condition. Although, at a more recent doctor's visit, Defendant stated that he was "feeling much better," and had no had any further chest pain since his last treatment, this

13

statement does not undermine the seriousness of Defendant's heart condition. The Court concludes that, although Defendant may have seen some improvement in his symptoms, his coronary artery disease is ultimately "a serious and advanced illness with an end of life trajectory," and thus, constitutes an extraordinary and compelling reason meriting a sentence reduction pursuant to § 3582(c)(1)(A).

### b. Danger to Any Other Person or to the Community

Section 1B1.13 of the Guidelines provides that compassionate release is only appropriate where "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(2) (Nov. 1, 2018 Manual). Section 3142(g) outlines the factors the Court must consider in determining whether a defendant should be detained pending trial. Specifically, § 3142(g) provides:

> (g) Factors to be considered.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The Court acknowledges that Defendant's criminal conduct involved both a controlled substance and a firearm. However, the Court takes note that Defendant's criminal history does not involve violence. As to Defendant's characteristics, he is suffering from numerous physical ailments, and is 60 years of age. Defendant is disabled and wheelchair-bound. Given Defendant's age and physical impairments, the Court is disinclined to find that Defendant poses any significant risk to the community at this time. The Court also notes that Defendant appears to have strong family ties, as his release plan is to live with his stepson, who will provide medical care for Defendant. The Court cannot fathom, and no party has attempted to explain, how Defendant could pose a danger to the community in light of his chronic physical impairments. Thus, the Court concludes that Defendant has shown that he would not pose a danger to any other person or the community if released.

### c. Section 3553(a) Factors

Section 3553(a) provides:

> (a) Factors to be considered in imposing a sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence[s] and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission];

. . . .

(5) any pertinent policy statement guidelines [issued by the Sentencing Commission];

. . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Defendant contends that, under the § 3553(a) factors, his time served constitutes a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing. [Case No. 3:11-cr-76, doc. 101 at 5; Case No. 3:12-cr-145, doc. 12 at 5]. Defendant states

that his term of "6 plus" years has met the original sentencing goals in light of his characteristics, the need for an effective and supportive environment for medical care, and the accomplishment of deterrence and public safety goals. [*Id.*]. The government responds that a sentence of time served, which would amount to a 13-month sentence on the drug and fraud related charges, would be inconsistent with the § 3553(a) factors, in light of the seriousness of the offenses. [Case No. 3:11-cr-76, doc. 103 at 3-4; Case No. 3:12-cr-145, doc. 15 at 3-4].

The Court finds that reducing Defendant's sentence to a sentence of time served is consistent with the § 3553(a) factors. Although the Court does not wish to minimize the seriousness of Defendant's offenses, the Court concludes that Defendant's time served of over six years in prison is sufficient under the § 3553(a) factors. The Court notes that, according to the BOP's Inmate Locator, Defendant is currently scheduled for release on January 13, 2021. By the Court's calculation, reducing Defendant's sentence to time served would result in Defendant being released approximately 17 months earlier than he otherwise would. Out of a sentence of 106 months, with 73 months already served, the remaining 17 months is negligible, for purposes of achieving the goals of sentencing. Thus, the Court concludes that, given Defendant's medical conditions, his continued incarceration would not serve the goals of sentencing, as laid out in the § 3553(a) factors.

Because the Court finds that Defendant has shown extraordinary and compelling reasons, does not pose a danger to any other person or the community, and a reduction in sentence would be consistent with the § 3553(a) factors, Defendant's motion for a sentence

17

reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [case no. 3:11-cr-76, doc. 101; case no. 3:12-cr-145, doc. 12] will be **GRANTED**.

### C. Conditions of Supervised Release

Defendant requests that his conditions of supervised release be modified to accommodate the reasons for the sentence reduction. [Case No. 3:11-cr-76, doc. 101 at 5-6; Case No. 3:12-cr-145, doc. 12 at 5-6]. Specifically, Defendant requests that the conditions allow him to live in the Eastern District of Tennessee, report to the probation officer by telephone, and that the employment requirement be excused. [*Id.*]. The government did not respond to this request.

The Court may, in its discretion, modify a condition of supervised release at any time prior to the expiration of the supervised release term, pursuant to the provisions governing the initial setting of supervised release conditions. 18 U.S.C. § 3583(e)(2); *United States v. Johnson*, 529 U.S. 53, 60 (2000). Specifically, the Court must consider the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) in setting the conditions of supervised release. 18 U.S.C. § 3583(e). "The applicable statutory provisions generally require that the conditions be reasonably related to the goals of rehabilitation of the defendant and the protection of the public, and involve no greater deprivation of liberty than is reasonably necessary." *Green v. United States*, 3:08-0784, 2010 WL 2010937, at *2 (M.D. Tenn. May 19, 2010) (citing *United States v. Lowenstein*, 108 F.3d 80, 85 (6th Cir. 1997); Fed. R. Crim. P. 32.1(c)).

Although the Court generally must hold a hearing before modifying the conditions of supervised release, the hearing is not required if: (1) the relief sought is favorable to the

person and does not extend the term of supervised release; and (2) an attorney for the government has received notice of the relief sought, has had a reasonable opportunity to object, and has not done so. Fed. R. Crim. P. 32.1(c)(2)(B)-(C). The Court concludes that no hearing is necessary, as the relief sought is favorable to the Defendant, does not extend the term of supervised release, and the government received a chance to respond to this request, but failed to do so.

The Court finds that, considering the applicable factors under § 3553(a), Defendant's requested modifications to his conditions of supervised release are imminently reasonable. Defendant is already permitted, by the conditions of supervised release, to reside anywhere within the judicial district. As to Defendant's request that he be allowed to report to his probation officer by telephone, the Court finds this request appropriate in light of Defendant's medical conditions, discussed at length above. Moreover, as to Defendant's request that he be excused from the employment requirement in the standard conditions of supervised release, the Court also finds this request reasonable in light of Defendant's medical conditions. Accordingly, the Court will **GRANT** Defendant's request to modify the conditions of supervised release, in that he is excused from the employment requirement, and may report to his probation officer by telephone.

### III. CONCLUSION

Accordingly, for the reasons stated herein, Defendant's motion to reduce sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), for immediate compassionate release [case no. 3:11-cr-76, doc. 101; case no. 3:12-cr-145, doc. 12] will be **GRANTED**. Defendant's sentence will be reduced to **time served**. Defendant's conditions of supervised release will

be modified to allow Defendant to report to his probation officer by telephone and to excuse him from the employment requirement. Except as provided herein, all provisions of the judgment dated January 15, 2013, shall remain in effect. An order consistent with this opinion will be entered.

                                                          s/ Thomas W. Phillips
                                         SENIOR UNITED STATES DISTRICT JUDGE